FILED NOV 0 5 2019
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAVIN LANNING,<br><br>Plaintiff,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC; and DOES 1 to 10,<br><br>Defendants. | Case No.: 3:19-cv-00773-BEN-LL<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY ACTION** |

On July 25, 2019, Defendant BMW of North America, LLC filed a Motion to Compel Arbitration and stay all proceedings. Upon review of the moving papers, the Court finds this matter fully briefed and suitable for resolution without oral argument. For the reasons set forth below, the Court **GRANTS** Defendant's Motion to Compel Arbitration and Stay Action.

## I. BACKGROUND

On or about March 10, 2016, Plaintiff Gavin Lanning ("Plaintiff") purchased a 2014 BMW X5 sDrive 35i, vehicle identification number 5UXKR2C55E0H33008, (Vehicle) from BMW Encinitas (hereinafter "Dealer") which was manufactured and or distributed by Defendant. (Doc. No. 1 ¶ 4.) The Purchase Contract (Contract) utilized to

1

complete the sale consisted of a 7-page document titled "BMW Financial Services – Motor Vehicle Retail Installment Contract—California." (Doc. No. 1-1, Exh. E.) Plaintiff signed the Contract, which included an arbitration clause, on March 10, 2016. (*Id.* at 7.) Plaintiff alleges that, in connection with the purchase, he received the express written warranty of the manufacturer in that the written statement accompanied the product. *See Id.* ¶¶ 5-7. Thereafter, Plaintiff apparently experienced problems with the Vehicle.

Plaintiff alleges that the Defendant "failed to conform the vehicle to their express warranty within a reasonable number of attempts or within 30 days." *Id.* ¶¶ 14-17. As a result, Plaintiff filed this "lemon law" action against the Defendant in the San Diego Superior Court alleging the following causes of action: (1) Violation of Subdivision (D) of Civil Code Section 1793.2; (2) Violation of Subdivision (B) of Civil Code Section 1793.2; (3) Violation of Civil Code Section 1793.2(a)(3); (4) Breach of Express Written Warranty; (5) Breach of Implied Warranty of Merchantability; and (6) Violation of the Federal Magnuson-Moss Warranty Act. (*See* Doc. No. 1-3.) The suit was subsequently removed on April 26, 2019. (Doc. No. 1.)

Presently before the Court is Defendant's Motion to Compel Arbitration and to Stay Action. (Doc. No. 19.) On August 8, 2019, Plaintiff filed his opposition. (Doc. No. 20.) On August 15, 2019, Defendant filed its reply. (Doc. No. 21.)

## II. LEGAL STANDARD

A.  Motion to Compel Arbitration.

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of a contract." 9 U.S.C. § 2. "Once the court has determined that an arbitration agreement relates to a transaction involving interstate commerce, thereby falling under the FAA, the court's only role is to determine whether a valid arbitration agreement exists and whether the scope of the dispute falls within that

2

agreement." *Ramirez v. Cintas Corp.*, No. C 04-00281 JSW, 2005 WL 2894628, at *3 (N.D. Cal. Nov. 2, 2005) (citing 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

B. <u>Request for Judicial Notice.</u>

A district court may take notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). "[A] court may take judicial notice of 'matters of public record,'" *Lee*, 250 F.3d at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

## III. DISCUSSION

**A.　Request for Judicial Notice.**

As a preliminary matter, Defendant asks that the Court take judicial notice of the original Purchase Contract. The Plaintiff did not object to the request for judicial notice. The Contract is attached as Exhibit 1 to the Dixon Declaration, rendering it a true and correct copy of a court record, which is subject to judicial notice. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

Accordingly, the Court **GRANTS** Defendant's request for judicial notice.

**B.　Plaintiff's Claims Against Defendant are Subject to Arbitration.**

In the instant Motion, Defendant seeks to compel arbitration consistent with the arbitration clause. Plaintiff argues separately that (1) *Defendant lacks standing to enforce*

*the agreement*, and (2) *Arbitrating Song-Beverly Claims is Non-Binding at the Consumer's Election*. Under California law, the party opposing the arbitration bears the burden of proving that the arbitration provision is unenforceable. *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1149 (2013).

1. <u>Defendant has standing to enforce the arbitration clause</u>.

Plaintiff contends that the Defendant is not a signatory or party to the Contract between the Plaintiff and the Dealer, and, therefore, does not have standing to enforce the arbitration clause. (*See* Doc. No. 20 at 3-4.)

"General contract and agency principles apply in determining the enforcement of an arbitration agreement by or against nonsignatories." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009). In particular, "a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (2013) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)). Plaintiff raises two arguments with respect to why the Defendant lacks standing to enforce the Contract, which the Court addresses in turn below.

    a. *<u>Defendant May Enforce the Contract Under Equitable Estoppel</u>*.

First, the Court addresses whether the Defendant can enforce the Contract under the doctrine of equitable estoppel. In *Kramer*, the Ninth Circuit collected various California cases and concluded that:

> Where a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are found in or intimately connected with the obligations of the underlying agreement."

4

*Kramer*, 705 F.3d at 1128-29 (internal quotation marks, brackets, and citations omitted). Notably, this test is conjunctive, not disjunctive. Equitable estoppel only applies when *both* requirements are satisfied, a point confirmed by the California Court of Appeal. *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 219 (2009) ("[A]llegations of substantially interdependent and concerted misconduct by signatories and nonsignatories, standing alone, are not enough: the allegations of interdependent misconduct must be founded in or intimately connected with the obligations of the underlying agreement.").

Here, Plaintiff's claims arise from the manufacturer's warranty contained in the Contract. In this case, it would be unfair to permit Plaintiff to hold the nonsignatory Defendant liable under the terms of the Contract's warranty while, at the same time, circumventing the Contract's mandate to arbitrate. *Mance v. Mercedes-Benz USA*, 901 F. Supp. 2d 1147, 1157 (N.D. Cal. 2012).

Furthermore, Plaintiff's argument that his claims do not require arbitration because the customer agreements with the Contract do not relate to the performance of the vehicle, i.e., product liability, are unavailing. (Doc. No. 20 at 4-6.) First, absent the purchase contract with the dealer, there would be no vehicle purchase, and absent that purchase, there would be no manufacturer's warranty. (Doc. No. 19 at 10-11.) Thus, any breach of an express warranty claim here is therefore tethered to the [purchase contract]. (Doc. No. 19 at 11.) Second, the Complaint states that "[in] connection with the Contract, Plaintiff received an express written warranty in which Defendant undertook to preserve or maintain the utility or performance of the Vehicle or to provide compensation if there is a failure in utility or performance for a specified period.[1] (Doc. No. 1-3 at 2.) Third, Plaintiff is seeking damages "under the Contract." (Doc. No. 1-3 at

---

[1] The warranty provided, in relevant part, that in the event a defect developed with the Vehicle during the warranty period, Plaintiff could deliver the Vehicle for repair services to Defendant's representative and the Vehicle would be repaired.

5

9.) As a result, Plaintiff's claims against Defendant are intertwined with the Contract containing the arbitration clause.

Accordingly, Defendant has standing to enforce the arbitration clause under the doctrine of equitable estoppel. Next, the Court will address whether the Defendant, despite being a nonsignatory to the Contract, is nonetheless an intended third-party beneficiary.

### b. *Defendant is a Third-Party Beneficiary.*

Defendant argues that when the Contract is read as a whole, it is a third-party beneficiary of the arbitration provision because it falls within the class of persons or entities for whom the arbitration provision was intended. *See Cione v. Foresters Equity Servs., Inc.*, 58 Cal. App. 4th 625, 636 (1997) (intent to benefit non-signatory appeared from the express terms of the contract in which plaintiff agreed to arbitrate any dispute with defendant). (Doc. No. 19 at 13-14.)

"It is well established that a nonsignatory beneficiary of an arbitration clause is entitled to require arbitration." *Harris v. Superior Court*, 188 Cal. App. 3d 475, 478 (1986) (citing *Dryer v. L.A. Rams*, 40 Cal. 3d 406, 418 (1985). Thus, nonsignatories of a contract may nonetheless enforce its terms if, among other things, they are third party beneficiaries of the contract. *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). However, "the mere fact that a contract results in benefits to a third party does not render that party beneficiary; rather, the parties to the contract must have intended the third party to benefit." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1290 (9th Cir.) (internal quotation marks and brackets omitted), *cert. denied*, --U.S.--, 138 S. Ct. 203, 199 L. Ed. 2d 114 (2017). Under California law,

> The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract. If the terms of the contract necessarily require the promisor to confer a benefit on a third person, then the contract, and hence the parties thereto, contemplate a benefit to the third person. The parties are presumed to intend the consequences of a performance of the contract.

6

*Souza v. Westlands Water Dist.*, 135 Cal. App. 4th 879, 891 (2006). "Generally, it is a question of fact whether a particular third person is an intended beneficiary of a contract[.]" Epitech, *Inc. v. Kann*, 204 Cal. App. 4th 1365, 1372 (2012). "However, where…the issue can be answered by interpreting the contract as a whole and doing so in light of the uncontradicted evidence of the circumstances and negotiations of the parties in making the contract, the issue becomes one of law that we resolve independently." *Prouty v. Gores Tech. Grp.*, 121 Cal. App. 4th 1225, 1233 (2004). The party seeking to compel arbitration bears the burden of putting forward evidence affirmatively establishing its status as an intended third-party beneficiary. *See Norcia*, 845 F.3d at 1291 ("Samsung does not point to any evidence in the record indicating that Norcia and Verizon Wireless intended the Customer Agreement to benefit Samsung. Therefore, we conclude that Samsung fails to bear its burden of establishing that it was a third-party beneficiary.").

The Contract, in this case, reminded the Plaintiff multiple times to read the complete agreement before he signed it.[2] The Contract further states that it is entered into between the buyer(s) and the seller name above on page-1, and expressly states on page-7, the signature page, that Dealer assigned the Contract 'to BMW Bank of North America, a wholly-owned subsidiary of BMW Financial Services NA, LLC', which itself is a wholly-owned subsidiary of Defendant. (*See* Doc. No. 21.) It also contains an arbitration clause located on page-6 which states in pertinent part, "Any Claim shall, at

---

[2] This included a bold type face section stating, in part, "**Notice to Buyer: (1) Do not sign this agreement before you read it [.]**" The Contract's signature page also states in bold, "By signing below, you agree to the terms of this contract, you confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledged that you have read all pages of this contract before signing it." (Doc. No. 19 at 3.)

your or my election, be resolved by neutral, binding arbitration and not by a court action." (Doc. No. 19 at 3.) The arbitration clause's term "Claim" is broadly defined as:

> *any claim, dispute or controversy*, whether in contract, tort, statute or otherwise, whether preexisting, present or future between me and you or you ... affiliates ... or assigns, or between me and any third parties if I assert a Claim against such third parties in connection with a Claim I assert against you, *which arises out of or relates to my ... purchase or condition of [the Subject] Vehicle, [the Purchase] Contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract.)*

*Id.* at 4.

In this case, Defendant argues that its right to compel arbitration arises from the Dealer's assignment of the Contract. Another California state court recently confronted a similar situation. (*See Ronay Family Ltd. P'ship v. Tweed*, 216 Cal. App. 4th 830.) In *Ronay*, "the arbitration agreement at issue required arbitration of 'any controversy arising out of or related to [the investor's] accounts, the transactions with [a broker], its officers, directors, *agents, registered representatives* and/or employees of [the investor]." (Doc. No. 21 at 6.) The *Ronay* court held that when a person or entity can demonstrate it was a member of the class of persons for whom the arbitration agreement was intended to benefit (e.g. the broker's officers, directors, and/or employees) are entitled to enforce the arbitration agreement as a third-party beneficiary. *Ronay*, 216 Cal. App. 4th at 838-839.

Similarly, Plaintiff here entered into a binding arbitration agreement when he purchased the 2014 BMW X5 from Dealer.[3] (Doc. No. 19 at 13.) After Plaintiff filed his Complaint and the case was removed, Defendant rightfully sought to compel arbitration to enforce the arbitration provision as a third-party beneficiary because the assignment effectively placed Defendant within the class of persons (i.e., assigns) whom the

---

[3] Dealer subsequently assigned the Contract "to BMW Bank of North America, a wholly-owned subsidiary of BMW Financial Services NA, LLC", which itself is also a wholly-owned subsidiary of Defendant. (Doc. No. 19 at 6.)

8

arbitration provision was intended to benefit. *Id.* at 13-14. Defendant's argument is bolstered by the fact that the Contract contemplates the Defendant, rather than BMW Bank of North America, BMW Financial Services NA, LLC, or Dealer, would provide the warranty covering the condition of the vehicle. (Doc. No. 1-1, Exh. E at 6.) Thus, by assigning the Contract, Dealer effectively placed Defendant within the class of persons (i.e., assigns) whom the arbitration provision was intended to benefit.

Accordingly, Defendant has standing to enforce the arbitration clause as a third-party beneficiary.

2. <u>Arbitration does not violate the Song-Beverly Act.</u>

Lastly, citing to Cal. Civ. Code § 1793.22, Plaintiff argues that enforcing the binding arbitration provision would deprive him of his rights because the Song-Beverly Act calls for non-binding arbitration to the consumer if the consumer is dissatisfied with the third-party dispute resolution decision." (Doc. No. 21 at 8.) Defendant contends that Plaintiff's argument misinterprets the plain statutory language of Cal. Civ. Code § 1793.22 (hereinafter "§ 1793.22").

The Tanner Consumer Protection Act, codified in § 1793.22, enabled manufacturers to establish an elective, prelitigation, "qualified third-party dispute resolution process. It is not required but if such a program exists and consumers decide to participate, they may later elect to discard the results and proceed with a lawsuit. Cal. Civ. Code § 1793(d)(2). The statutory provision encourages manufacturers to maintain these prelitigation processes by conferring "certain advantages, including an exemption from the civil penalty unless the manufacturer has willfully violated the law." *Cummins, Inc. v. Superior Court*, 36 Cal. 4th 478, 486 (2005) (citing Cal. Civ. Code §§ 1794(c), (e)(2).)

In this case, Plaintiff chose to file a lawsuit instead of participating in such a program. But even if he had, a "qualified third-party dispute resolution process" does not displace a contractual arbitration agreement.

9

Thus, the Tanner Consumer Protection Act does not conflict with the enforcement of the arbitration clause calling for binding arbitration, nor is it a barrier to compelling arbitration in this matter.

### 3. Should Proceedings in This Court be Stayed?

Having granted Defendant's Motion to Compel Arbitration, the Court must determine whether the claims should be stayed pending arbitration proceedings.

Defendant requests that the Court stay the proceedings pending arbitration, arguing that a stay is mandatory pursuant to § 3 of the FAA. (Doc. No. 19 at 14-15.) "A party is only entitled to a stay pursuant to § 3 as to arbitrable claims or issues." *Winfrey v. Kmart Corp.*, 692 F. App'x 356, 357 (9th Cir. 2017) (*citing Leyva v. Cert. Grocers of Cal., Ltd.* 593 F.2d 857, 863 (9th Cir. 1979). A trial court may grant a stay "pending resolution of independent proceedings which bear upon the case" where "it is efficient for [the courts] own docket and the fairest course for the parties." *Leyva*, 593 F. 2d at 863.

The Court finds that a stay is proper in these circumstances. In this case, the factual issues that will be resolved in arbitration clearly "bear upon [the instant] case" because these facts will determine Defendant's liability for Plaintiff's claims. (*See Id.*) Thus, it is in the interest of efficiency to grant a stay to avoid duplicative proceedings as to the same issues.

Considering the foregoing analysis granting Defendant's Motion to Compel Arbitration, the Court **STAYS** this action pursuant to the FAA, 9 U.S.C. § 3, pending completion of the arbitration proceedings.

///
///
///
///
///
///

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Compel Arbitration and Stay Action. Court further sets this matter for a Status Conference on March 16, 2020, at 10:30 a.m. in Courtroom 5A before the Honorable Roger T. Benitez.

**IT IS SO ORDERED.**

Dated: October 5, 2019

HON. ROGER T. BENITEZ
United States District Judge